IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PEDRO L. MARRERO, | ) | Case No. 1:20-cv-212 |
| | ) | |
| Plaintiff, | ) | 1JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

**I.     Introduction**

Plaintiff, Pedro L. Marrero, seeks judicial review of the final decision of the Commissioner of Social Security, denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before me for preparation of a Report and Recommendation pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).[1] Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Marrero's application for DIB be AFFIRMED

**II.     Procedural History**

On January 19, 2017, Marrero applied for DIB. (Tr. 222-28).[2] Marrero alleged that he became disabled on December 22, 2012, due to: "1. Major Depressive Disorder w[ith] psychotic

---

[1] On January 31, 2020, Chief Judge Patricia A. Gaughan entered a differentiated case management order reflecting the automatic order of reference. ECF Doc. 3.
[2] The administrative transcript appears in ECF Doc. 11.

features, 2. Post Traumatic Stress Disorder, 3. Panic Attacks, 4. Anxiety, 5. High Blood Pressure, 6. Diabe[]tes, [and] 7. High Cholesterol." (Tr. 222, 268). The Social Security Administration denied Marrero's claims initially and upon reconsideration. (Tr. 133-160). Marrero requested an administrative hearing. (Tr. 180-81). ALJ Pamela Loesel heard Marrero's case on August 23, 2018, and denied the claim in a December 24, 2018 decision. (Tr. 13-87). On December 5, 2019, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). On January 31, 2020, Marrero filed a complaint to obtain judicial review from this court. ECF Doc. 1.

### III.    Evidence[3]

####    A.    Personal, Educational, and Vocational Evidence

Marrero was born on April 3, 1960. (Tr. 222). He was 52 years old on the alleged onset date and 56 years old on the day he filed his application. Marrero had a high school education. (Tr. 269). In his disability report and work history report, Marrero said that his past work included "cars and bags/luggage," "house person," and "warehouse shipping." (Tr. 269, 280).

####    B.    The ALJ Hearing

In opening statements at the ALJ hearing, Marrero's counsel stated:

> [P]rimarily . . . we're looking at [Marrero's] mental residual functional capacity and whether he would in fact be able to return to his work as a housekeeper and that he worked from 2003 to 2013. The prior Judge's decision found that he was able to do so, I think that it's, it's somewhat incongruent with the fact that Mr. Marrero when he worked as a housekeeper the reason that he was unable to continue that work that he had worked for so long was because of the onset of mental illness. The reason that he was not able to continue on as a housekeeper is he started getting panic attacks and anxiety attacks, large swings in his mood where he would be laughing one moment and crying another. * * * As a

---

[3] Marrero's arguments do not challenge the ALJ's assessment of any of the medical evidence, treatment of the medical opinion evidence, or conclusion that Marrero had the residual functional capacity to perform a reduced range of light work. *See generally* ECF Doc. 12. Accordingly, in contrast to most Social Security appeals, a review of the medical evidence and medical opinion evidence is not necessary.

vocational case I would argue that his MRFC precludes his ability to return to
work as a housekeeper.

(Tr. 53-55).

Marrero testified at he ALJ hearing. (Tr. 55-79). Marrero said that he last worked in December 2012 as a "housekeeper, house person . . . housekeeper" at Disney. (Tr. 61). He said that he worked in that position for 10 years. (Tr. 61). His duties included "keep[ing] the building clean, collect[ing] linen from a lady, dirty linen from the ladies in the track." (Tr. 61, 64). After collecting linens from other housekeepers, he would "put them in the bin" which weighed up to 300 pounds when full. (Tr. 62-64). He would push the full cart to the elevator and put it in a designated location for someone else to pick up. (Tr. 63). He also cleaned hallways and common areas. (Tr. 62). He "[s]ometimes" moved furniture when he was cleaning. (Tr. 62). The heaviest furniture he had to lift was a bed. (Tr. 62). He did not deal with window coverings or clean windows. (Tr. 62). Marrero said that he also collected trash on his linen cart and took it to bins in the laundry room. (Tr. 63-64). He stood the entire time he worked, and he would lift over 50 pounds. (Tr. 64).

Michael Klein, a Vocational Expert ("VE") to whose qualifications Marrero stipulated, also testified at the ALJ hearing. (Tr. 80-87). The VE said that Marrero's

> past work would fall under one title, which is housekeeper, the [*Dictionary of Occupational Titles* ("DOT")] code is 323.687-014, by DOT that job is light, unskilled, SVP 2, it sounds like it was medium as performed and I believe that's consistent with how that job with the laundry added is performed in the economy.

(Tr. 81). The ALJ asked the VE whether a hypothetical individual with Marrero's age, experience, and RFC could perform any of Marrero's past work. (Tr. 82-83). The VE said hat such an individual could not perform Marrero's past work as actually performed, but he could perform the housekeeper work as generally performed (light work). (Tr. 83). The ALJ also

3

asked about, and the VE provided testimony regarding, the effects of off-task behavior and absenteeism on the ability to sustain competitive employment. (Tr. 83-84). The ALJ asked, "Is the testimony then that you've provided consistent with the information found in the [DOT] and its companion publication *Selected Characteristics of Occupations* defined in the revised DOT other than what I've, other than what you've already indicated?" (Tr. 85). And the VE said, "I don't believe so. Time off task, absenteeism, and the companion and [*sic*] at the workplace that's based on my professional experience in the field of vocational rehabilitation." (Tr. 85).

Marrero's attorney asked the VE whether another occupational title other than "housekeeper" might more accurately describe his past work in light of Marrero's testimony that he would have to push around a 300-pound cart, put trash and linen onto the cart, kept the building clean, collect trash, clean common areas, and mov furniture. (Tr. 85-86). The VE said:

> I don't believe specifically, I think though most hotels there's usually on the floor the housekeeping doing work and then there's housecleaner in the rooms. And then the housekeeper also is responsible for also collecting the linens during this collecting task and taking them down to the laundry, those are the tasks that I included in the medium range as performed. But specifically I don't believe the DOT deals with that but I believe as performed those types of chores is what they would do at the medium range as performed.

(Tr. 86). Marrero's attorney asked if there was another DOT title that deals with those tasks, and the VE said, "I don't believe so specifically, unless it was laundry worker." (Tr. 86). Marrero's attorney asked the VE if Marrero did not perform the "housekeeper" position as generally performed in the DOT because of his additional laundry duties, and the VE said, "That's true." (Tr. 86-87).

### C. Prior ALJ Decision

Before filing the underlying application for DIB in this case, Marrero had filed a previous application that ALJ Eric Westley denied on October 22, 2015. (Tr. 116-26). In denying

4

Marrero's previous application, ALJ Westly found – based on VE Paula Zinsmeister's testimony – that Marrero's past relevant work was classified as "Cleaner/Housekeeper (DOT #323.687-014) and typically done at the light exertion level and unskilled (SVP 2). The claimant reported that he did the work at the medium exertion level." (Tr. 125-26); *see also* (Tr. 108) (VE testimony). ALJ Westley also found that, based on the VE's testimony, Marrero was able to perform his past work as a "Cleaner/Housekeeper" from the alleged onset date of December 1, 2012, through the date of his decision. (Tr. 125-26); *see also* (Tr. 108-09) (VE testimony).

## IV. The ALJ's Decision

In the opening portion of her written decision, the ALJ addressed whether the doctrine of *res judicata* – as laid out in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), and *Dennard v. Sec'y of Health and Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990) – applied to any portion of the prior adjudication. (Tr. 17). The ALJ stated that, although she did not apply *res judicata* to any other portion of her analysis, "she did apply the doctrine and adopt the prior ALJ's findings of the claimant's past relevant work." (Tr. 17). The ALJ also made the following paraphrased findings relevant to Marrero's argument on judicial review:

> 5. Marrero had the residual functional capacity to perform light work, except he is able to occasionally lit and carry 20 pounds and frequently lift and carry 10 pounds, is able to stand and walk 6 hours of an 8-hour workday, is able to sit for 6 hours of an 8-hour workday, unlimited push and pull other than shown for lift and/or carry; must avoid concentrated exposure to hazards, unprotected heights, moving machinery and commercial driving; can perform simple routine tasks (unskilled work) with no fast pace or high production quotas and with infrequent change where changes are introduced gradually; with occasional superficial interaction (meaning of a short duration for a specific purpose) with the general public, co-workers and supervisors; and can perform low stress work meaning no arbitration, negotiation, responsibility for the safety of others, or supervisory responsibility. (Tr. 29-30).
>
> 6. Through the date last insured, Marrero was capable of performing past relevant work as a "Cleaner/Housekeeper," DOT No. 687-014. This work did not require the performance of work-related activities precluded by the mental or physical

>  limitations in Marrero's RFC. The VE identified Marrero's work as generally and actually performed with reference to the DOT and its companion volume, the Selected Characteristics of Occupations ("SCO"). Based on Marrero's testimony and the VE's testimony, Marrero's past work met criteria for "Cleaner/Housekeeper." And the VE's testimony was consistent with the DOT and SCO.

Based on his findings, the ALJ determined that Marrero had not been under a disability from December 22, 2012, through March 31, 2018 – the date last insured. (Tr. 41).

**V.  Law & Analysis**

    **A.  Standard of Review**

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones*, 336 F.3d at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets this low standard for evidentiary support. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783 ("It is not our role to try the case de novo." (quotation omitted)). This is so because the Commissioner enjoys a

"zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals

7

any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. §§ 404.1512(a), 416.912(a).

### B. Step Four: Ability to Perform Past Relevant Work

#### 1. The Parties' Arguments

Marrero argues that the ALJ's conclusion that he could perform his past work as a "Cleaner/Housekeeper" was not supported by substantial evidence. ECF Doc. 12 at 8-13. Marrero asserts that the ALJ erred in relying on the VE's testimony that his past work was best described as "housekeeper" (DOT No. 323.687-014) because his testimony about his job duties was inconsistent with the DOT definition of "housekeeper." ECF Doc. 12 at 8-9. Instead, Marrero contends that his past work was more consistent with "housecleaner" (DOT No. 323.687-018) – a heavy work job that he could not perform when his RFC limited him to light work. ECF Doc. 12 at 10-11. Alternatively, Marrero argues that his past work was a composite job because it had no direct counterpart in the DOT and could only be described with reference to both "housekeeper" (DOT No. 323.687-014) and "housecleaner" (DOT. No. 323.687-018). ECF Doc. 12 at 12. Marrero asserts that, because the POMS directs that an ALJ can find a claimant able to perform a past composite job only if he has the RFC to perform the job *as it was actually performed*, the ALJ's finding that he could perform his past relevant work *as it was*

8

*generally performed* was error. ECF Doc. 12 at 12-13. Marrero also contends that the ALJ's erroneous conclusion that he could perform his past work was not harmless because he would have been conclusively disabled under the Medical Vocational Guidelines at Step Five. ECF Doc. 12 at 11.

The Commissioner responds that the ALJ applied proper legal standards and reached a decision supported by substantial evidence in finding that Marrero was able to perform his past work as a housekeeper. ECF Doc. 14 at 7-11. The Commissioner argues that Marrero's mere disagreement with the VE's characterization of his past work – without any expert testimony supporting his lay opinion that his past work would have been better classified as "housecleaner" – is insufficient to show that the ALJ unreasonably relied on the VE's testimony. ECF Doc. 14 at 8-10. The Commissioner also contends that the VE considered other titles, rejected them, and specifically distinguished Marrero's past work from "housecleaner" work, and that the VE's testimony was consistent with the May 2015 VE testimony that Marrero's past work was classified as "housekeeper." ECF Doc. 14 at 9. Further, the Commissioner argues that Marrero's composite job argument is: (1) waived because he did not raise the argument before the ALJ; and (2) meritless because the VE testified that there *was* a DOT counterpart describing Marrero's past work. ECF Doc. 14 at 11.

In his reply brief, Marrero argues that the ALJ erred in relying on the VE's testimony because the VE's testimony was not reliable. ECF Doc. 15 at 1-4. Marrero contends that the ALJ should have found the VE's testimony was too feeble to rely upon when the VE said that Marrero's past work might have also qualified as "houseman," but that the VE did not know what a houseman's duties were. ECF Doc. 15 at 2-3. And, because the VE's testimony lacked sufficient indicia of reliability, Marrero asserts that it was not substantial evidence to support the

9

ALJ's conclusion. ECF Doc. 15 at 3. Marrero also argues that his case is distinguishable from cases in which arguments not raised before the ALJ were waived and that the VE's inability to "cite to or give any details about the job title more closely aligned with [Marrero's] past work [left] little else to challenge." ECF Doc. 15 at 4.

### 2. Prior Work and VE Testimony

At Step Four, the claimant has the burden to establish that he is unable to perform his past relevant work in light of his RFC. 20 C.F.R. § 404.1520(a)(4)(iv); *see also Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (explaining that a claimant challenging a finding that she was able to perform past relevant work had "fail[ed] to provide [the court] with the factual record [the court] need[ed] to find in her favor"). In evaluating whether a claimant is able to perform his past relevant work, an ALJ: (1) will ask the claimant for information about the past work (duties, requirements, etc.); and (2) may consult other sources, such as VE testimony or the DOT. 20 C.F.R. § 404.1560(b); *see also* SSR 00-4p, 2000 SSR LEXIS 8, at *4 (Dec. 4, 2000) ("We may also use VEs and VSs at these steps to resolve complex vocational issues."). "Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 SSR LEXIS 8, at *4. At the hearing, the ALJ must ask the VE if his or her testimony is consistent with the DOT and, if it is not, ask the VE to explain that conflict. SSR 00-4p, 2000 SSR LEXIS 8, at *4-5. And, when such an explanation is given, the ALJ must explain how she resolved the conflict before relying on the VE's testimony. SSR 00-4p, 2000 SSR LEXIS 8, at *9. When the VE says that there is no conflict, SSR 00-4p does not require "the ALJ to conduct an independent investigation into the testimony of [the VE] to determine if [the VE is] correct." *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) (noting that it was the claimant's burden, through counsel,

to present to the ALJ any argument that the VE's testimony was inconsistent with the DOT). "Furthermore, even if there is a conflict between the expert's testimony and the DOT, 'neither the DOT or [the expert's testimony] automatically trumps when there is a conflict.'" *Id.* (quoting SSR 00-4p, 2000 SSR LEXIS 8, at *5).

The parties' briefing points to the Supreme Court's recent decision in *Biestek* as authoritative on whether a VE's testimony is "substantial evidence" supporting an ALJ's decision. *See* ECF Doc. 14 at 8; ECF Doc. 15 at 2. In *Biestek*, the appellant challenged the Sixth Circuit's decision rejecting a rule that a VE's testimony could not be "substantial evidence" if the VE declined upon request to produce supporting data. 139 S. Ct. at 1153. In rejecting the appellant's argument, the Supreme Court emphasized that the ALJ's decision often boils down to a case-by-case credibility assessment, explaining:

> But if . . . the ALJ views the expert and her testimony as otherwise trustworthy, and thinks she has good reason to keep her data private, her rejection of an applicant's demand need not make a difference. So too when a court reviews the ALJ's decision under the deferential substantial-evidence standard. In some cases, the refusal to disclose data, considered along with other shortcomings, will prevent a court from finding that "a reasonable mind" could accept the expert's testimony. But in other cases, that refusal will have no such consequence. Even taking it into account, the expert's opinion will qualify as "more than a mere scintilla" of evidence supporting the ALJ's conclusion.
>
> * * *
>
> Even without specific data, an applicant may probe the strength of testimony by asking an expert about (for example) her sources and methods – where she got the information at issue and how she analyzed it and derived her conclusions. And even without significant testing, a factfinder may conclude that testimony has sufficient indicia of reliability to support a conclusion about whether an applicant could find work.
>
> * * *
>
> Even though the applicant may wish for the data, the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold. The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case. It

11

> takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record. And in so doing, it defers to the presiding ALJ, who has seen the hearing up close.

*Id.* at 1156-57 (internal citations omitted).

The DOT defines "Cleaner, Housekeep[er]" as:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title.

*Cleaner, Houskeeping*, DOT No. 323.687-014, DICTIONARY OF OCCUPATIONAL TITLES (4th Ed., Rev. 1991). Under the DOT, the Cleaner I master title is defined as:

> Maintains premises of commercial, institutional, or industrial establishments, office buildings, hotels and motels, apartment houses, retirement homes, nursing homes, hospitals, schools, or similar establishments in clean and orderly condition, performing the following duties: Cleans rooms, hallways, lobbies, lounges, rest rooms, corridors, elevators, stairways, and locker rooms and other work areas. Sweeps, scrubs, waxes, and polishes floors, using brooms and mops and powered scrubbing and waxing machines. Cleans rugs, carpets, upholstered furniture, and draperies, using vacuum cleaner. Dusts furniture and equipment. Polishes metalwork, such as fixtures and fittings. Washes walls, ceiling, and woodwork. Washes windows, door panels, and sills. Empties wastebaskets, and empties and cleans ashtrays. Transports trash and waste to disposal area. Replenishes bathroom supplies. Replaces light bulbs. Classifications are made according to type of establishment in which work is performed.

*Cleaner I*, Master Titles and Definitions, DICTIONARY OF OCCUPATIONAL TITLES (4th Ed., Rev. 1991).

The ALJ applied proper legal standards in relying on the VE's testimony that Marrero was able to perform his past work as a "Cleaner/Housekeeper." 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. The ALJ complied with 20 C.F.R. § 404.1560(b) by: (1) specifically asking Marrero about the duties and requirements for his past work; and (2) asking the VE how

12

Marrero's past work would be classified and whether a hypothetical individual with Marrero's age, experience, and RFC could perform that work as actually or generally performed. 20 C.F.R. § 404.1560(b); (Tr. 81-83). The ALJ also complied with SSR 00-4p when she asked the VE whether his testimony was consistent with the DOT and made an express finding as to consistency. SSR 00-4p, 2000 SSR LEXIS 8, at *4-5, 9; (Tr. 40-41, 85). Because the VE had indicated that his testimony that Marrero's past work was best classified as "housekeeper" under the DOT, the ALJ was under no further obligation to determine whether the VE's testimony about consistency was correct. *Martin*, 170 F. App'x at 374. At that point, the ALJ was free to decide the VE's testimony was credible without this court second-guessing that credibility determination. *See Biestek*, 139 S. Ct. at 1156-57; *Jones*, 336 F.3d at 476.

Substantial evidence also supported the ALJ's conclusion that the VE's testimony that Marrero's past work was best classified as "housekeeper" was consistent with the DOT. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. The VE specifically referred to the DOT in classifying Marrero's prior work as "housekeeper," and specifically rejected any other classification on cross-examination. (Tr. 81, 85-87). Here, a natural understanding of the VE's testimony in response to the ALJ's consistency question (in view of his other testimony) was that his testimony – except the parts regarding off-task behavior and absenteeism – was consistent with the DOT. (Tr. 85). Substantial evidence also would have supported an independent evaluation by the ALJ of whether the VE's testimony was consistent with the DOT's definition of "cleaner, housekeep[er]" because: (1) Marrero testified that his work involved cleaning the hallways and common areas, collecting linens and trash, moving linens and trash to the laundry room and disposal bins, and "sometimes" moving furniture while cleaning; (2) all of those tasks are among those within the definitions of "cleaner, housekeep[er]" and "cleaner I," (which is

13

incorporated by reference into the definition of "cleaner, housekeep[er]"); and (3) the VE and ALJ in Marrero's prior adjudication had determined that his past work was as a "Cleaner/Housekeeper."[4] (Tr. 61-64, 108, 125-26); *Cleaner, Houskeeping*, DOT No. 323.687-014, DICTIONARY OF OCCUPATIONAL TITLES (4th Ed., Rev. 1991); *Cleaner I*, Master Titles and Definitions, DICTIONARY OF OCCUPATIONAL TITLES (4th Ed., Rev. 1991). And because the ALJ applied proper legal standards and reached a decision supported by substantial evidence in concluding that the VE's testimony was consistent with the DOT, the VE's testimony was substantial evidence supporting the ALJ's finding that Marrero's past work was as a "Cleaner/Housekeeper" and that he could return to that work. (Tr. 40-41); 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b); SSR 00-4p, 2000 SSR LEXIS 8, at *4.

Marrero's arguments that the VE's testimony was inconsistent with the DOT is also unavailing. Marrero never: (1) presented to the ALJ or VE his theory that "housecleaner" better matched his past work; (2) argued to the ALJ that the VE's testimony was inconsistent with the DOT; or (3) argued to the ALJ that his past work was actually a composite job. *See* (Tr. 49-87). At best, Marrero's failure to raise such arguments, despite having the opportunity to do so during cross-examination, left the ALJ without any reason to question the credibility or veracity of the VE's testimony regarding the classification of Marrero's past work or his testimony's consistency with the DOT. *See Martin*, 170 F. App'x at 374 (noting that the *claimant* has the burden to present his argument that the VE's testimony was inconsistent with the DOT during cross-examination); *see also Nessel v. Comm'r of Soc. Sec.*, No. 1:14-cv-442, 2014 U.S. Dist. LEXIS 156647, at *19 n.10 (S.D. Ohio, Nov. 5, 2014) ("To the extent Plaintiff argues that he

---

[4] Arguably, the prior, unchallenged ALJ finding that Marrero's prior work was as a "Cleaner/Housekeeper" was binding upon the ALJ in the instant adjudication. *See Dennard v. Sec'y of Health and Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990) (prior adjudication finding).

14

could not do his past work because it was a 'composite job,' it is too late for Plaintiff to bring up any alleged deficiencies about the vocational expert's testimony because Plaintiff and his attorney were given ample opportunity to question the vocational expert about this subject at the hearing and failed to do so."); *accord Dempsey v. Saul*, No. 1:18-cv-2806, 2020 U.S. Dist. LEXIS 64112, at *13 (N.D. Ohio, Apr. 13, 2020). At worst, Marrero's failure to raise the arguments at the hearing precludes him from raising them now. *See Gillman v. Comm'r of Soc. Sec.*, No. 2:16-cv-731, 2017 U.S. Dist. LEXIS 161579, at *12 (S.D. Ohio, Sept. 28, 2017) (finding that a claimant was "barred" from asserting that the ALJ erred in relying on VE testimony that was inconsistent with the DOT because the claimant had not raised the challenge to the VE's testimony during the ALJ hearing).

Finally, Marrero has not raised *any challenge* to the ALJ's statement that "she did apply the doctrine [of *res judicata*] and adopt[ed] the prior ALJ's finding of the claimant's past relevant work." (Tr. 17); *see generally* ECF Doc. 12; ECF Doc. 15. This alone would make any error alleged in Marrero's briefing harmless. In *Dennard v. Sec'y of Health and Hum. Servs.*, the Sixth Circuit indicated that prior adjudications concerning the classification of a claimant's prior work have *res judicata* effect. 907 F.2d at 599-600 (citing 42 U.S.C. § 405(h) ("[T]he findings and decision of the secretary after a hearing shall be binding upon all individuals who were parties to such a hearing.")); *see also* AR 98-3, 1998 SSR LEXIS 4 (June 1, 1998) (acquiescing to *Dennard*). In the prior adjudication, ALJ Westley found – based on a VE's hearing testimony – that Marrero's prior work was as a "Cleaner/Housekeeper." (Tr. 108, 125-26). Although the ALJ also took new VE testimony regarding the classification of Marrero's prior work and made independent findings regarding that classification, *see* (Tr. 40-41), the ALJ's concurrent statement that *res judicata* applied and required her to adopt the prior decision remains intact

15

because Marrero waived any challenge to that assessment by failing to raise such a challenge in his briefing.[5] *See Rabbers*, 582 F.3d at 654 ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless 'the claimant has been prejudiced in the merits or deprived of substantial rights because of the agency's procedural lapses.' *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)."); *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010) (explaining that an argument is waived if not raised). Thus, even if the ALJ erred in relying on the VE's testimony that Marrero could perform his past work as a "Cleaner/Housekeeper," that error was harmless.

To summarize, I find that the ALJ applied proper legal standards in conducting her independent analysis of Marrero's past work and any claimed error in in that analysis was harmless. I also conclude that the VE's testimony and other evidence in the record indicating that the VE's testimony was consistent with the DOT and that Marrero was able to perform his past work as a "Cleaner/Housekeeper" is more than sufficient to meet the very low "substantial evidence" threshold. *Biestek*, 139 S. Ct. 1154. And, even if a preponderance of the evidence could support a finding that the VE's testimony was not consistent with the DOT or that some other occupational title was a better fit, the ALJ's decision cannot be second-guessed because it was reasonably drawn from the record and fell within the Commissioner's "zone of choice." *O'Brien*, 819 F. App'x at 416; *Jones*, 336 F.3d at 477; *Mullen*, 800 F.2d at 545. The Commissioner's final decision should be affirmed.

---

[5] Even if the court were to review the ALJ's application of *res judicata*, it should find that the ALJ applied proper legal standards in applying that doctrine and adopting the prior ALJ finding that Marrero's past work was as a "Cleaner/Housekeeper" because: (1) that finding was made after a hearing; (2) any new testimony from Marrero and the VE was not material because it was duplicative of the testimony at the prior ALJ hearing; and (3) there was no intervening change in the law or regulations regarding the classification of past work. *See* AR 98-3p, 1998 SSR LEXIS 4, at *7-8 (explaining when *res judicata* under *Dennard* should be applied).

**VI.     Recommendation**

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Marrero's application for DIB be AFFIRMED.

Dated: December 29, 2020

                                                      Thomas M. Parker
                                                      United States Magistrate Judge

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).